# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DONALD S. TOOMER,<br><br>Defendant. | Case No. 2:17-cr-00193-LRH-CWH<br><br>**ORDER** |

Before the court is defendant Donald Toomer's Motion to Dismiss and Other Pretrial Motions[1] (ECF Nos. 28, 29), filed February 5, 2018, the government's response (ECF No. 39), filed March 26, 2018, and Toomer's reply (ECF No. 45), filed April 23, 2018. Toomer moves to dismiss on the basis of vindictive prosecution, and makes numerous other motions for discovery.

## I. BACKGROUND

The government alleges that between 2009 and 2010, defendant Toomer accepted over $200,000 in cash kickback payments from stock promoters as part of a large-scale stock manipulation scheme. The kickbacks were paid to persuade Toomer to solicit his clients to make the investments which were to help build artificial volume in the target stocks to make it appear to the rest of the investing public that those companies had a real following and actual market interest. In other words, Toomer helped to "pump" up the stock so that they could later "dump" holdings into the market at substantial profits. Toomer allegedly did not report that money as

---

[1] LR IC 2-2 requires that for each type of relief requested, a separate document must be filed. Here, Toomer has violated that rule by requesting numerous types of relief in the same document. Separate documents should have been filed for the motions to dismiss, for a bill of particulars, for grand jury transcripts, to compel discovery, and to strike language in the indictment. Additionally, the present motion is 49 pages, but absent court order, LCR 47-2 requires that motions be limited to 30 pages. Defense counsel is advised to read and adhere to the local rules.

income on his federal tax returns and, as a result, is charged in a two-count indictment with making or subscribing false tax returns, in violation of 26 U.S.C. § 7206(1).

## II. DISCUSSION

### A. Motion to Dismiss for Prosecutorial Vindictiveness

Two years prior to the Nevada indictment, in December, 2015, in the District of New Jersey, Toomer was charged in a five count indictment with conspiracy to commit securities fraud and investment advisor fraud, securities fraud, and investment advisor fraud. The investigation was complex, and produced voluminous discovery. Coincidentally, a few months later, while Toomer's case was pending, a New Jersey grand jury similarly indicted a Mr. Guy Gentile in a similar "pump and dump" scheme with conspiracy to commit securities fraud and securities fraud. The Gentile indictment was assigned to the same district judge as the Toomer case. Gentile filed a motion to dismiss his indictment based upon the statute of limitations, and in spite of the opposition by the government, the judge granted the motion. Because the New Jersey Toomer case presented a similar statute of limitations issue as Gentile, Toomer filed a similar motion to dismiss. Anticipating the same result, in June, 2017, the government decided to dismiss the Toomer case.

During investigation of the New Jersey case, the government obtained copies of Toomer's 2009 and 2010 tax returns as well as IRS account transcripts for those years, and knew that Toomer had received cash in exchange for recommending certain stocks to some of his investment advisor clients. Prior to moving for dismissal of the New Jersey case, but in the face of Toomer's motion to dismiss, the government advised Toomer's counsel that it was considering tax charges against Toomer. Absent a waiver by Toomer, venue was in Nevada because that is where he lived and had filed his tax returns. The government asked Toomer's counsel whether he would agree to waive any venue based objections if it filed the tax charges in New Jersey. Toomer's counsel declined, and within a few weeks, after explaining its decision to the district judge, dismissed the indictment. The Nevada indictment followed.

The Nevada indictment charges two tax offenses, each of which contains a statutory maximum term of imprisonment of three years. *See* 26 U.S.C. § 7206(1). The government

anticipates that the tax loss in this case will be in the range of $40,000 and $100,000, and that Toomer's exposure under the United States Sentencing Guidelines likely will be in the range of 21 to 27 months imprisonment. *See* U.S.S.G. §§ 2T1.1(a), 2T4.1, and 2T1.1(b)(1). In contrast, the New Jersey indictment charged Toomer with five separate counts and each was more severe than the tax charges he currently faces. Specifically, the government says that the conspiracy count carried a maximum term of imprisonment of five years (18 U.S.C. § 371), the two securities fraud counts each carried a maximum term of imprisonment of twenty years (15 U.S.C. § 78ff(a)), and the two investment adviser fraud counts each carried a maximum term of imprisonment of five years (15 U.S.C. § 80b-17). Collectively, the New Jersey indictment created statutory exposure of fifty-five years of imprisonment. Toomer's exposure under the Sentencing Guidelines in the New Jersey case was substantially higher than in the Nevada case because it charged a large-scale conspiracy with illicit gains in excess of $30 million.

*1. Standard of Review*

The government is presumed to have properly exercised its constitutional responsibilities to enforce the nation's laws. *United States v. Armstrong*, 517 U.S. 456, 463 (1996). The presumption of regularity in a prosecutorial decision is strong and must be overcome with clear evidence. *Id.* Toomer's right to due process of law is violated if the government filed the false tax return charges to penalize him for exercising a protected statutory or constitutional right. *See United States v. Goodwin*, 457 U.S. 368, 372 (1982). Toomer may establish prosecutorial vindictiveness by producing direct evidence of the prosecutor's punitive motivation towards him. *See United States v. Gallegos-Curiel*, 681 F.2d 1164, 1168 (9th Cir. 1982). *See, e.g., United States v. Hollywood Motor Car Co.*, 646 F.2d 384 (9th Cir. 1981), rev'd on other grounds, 458 U.S. 263 (1982) (per curiam) (finding actual vindictiveness when government threatened to bring additional charges against defendants if they exercised their right to request change of venue). Alternatively, he is entitled to a presumption of vindictiveness if he can show that the tax charges "were filed because [he] exercised a statutory, procedural, or constitutional right in circumstances that give rise to an appearance of vindictiveness." *Gallegos-Curiel*, 681 F.2d at 1168. Vindictive prosecution is generally found where the government has occasion to re-indict or re-try a

defendant after the exercise of a procedural right. *United States v. Burt*, 619 F.2d 831, 836 (9th Cir. 1980).

When there is no evidence of actual vindictiveness and the only question is whether it must be presumed, cases involving increased charges or punishments after trial are to be distinguished from cases in which the prosecution increases charges in the course of pretrial proceedings. A presumption of vindictiveness was not warranted in that pretrial setting because the "the prosecutor's assessment of the proper extent of prosecution may not have crystallized." *Goodwin*, 457 U.S. at 381. Because the prosecutor may properly reevaluate information as the case develops, he "should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct." *Id.* at 382. (footnote omitted). Furthermore, because before trial many procedural rights are asserted quite routinely, as "an integral part of the adversary process," it would be "unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter," even if they do burden the prosecution. *Id.*

Absent direct evidence of an expressed hostility or threat to the defendant for having exercised a constitutional right, to establish a claim of vindictive prosecution the defendant must make an initial showing that charges of increased severity were filed because the accused exercised a statutory, procedural, or constitutional right in circumstances that give rise to an appearance of vindictiveness. *See Burt*, 619 F.2d at 836; *United States v. Griffin*, 617 F.2d 1342, 1346 (9th Cir. 1980), *cert. denied*, 449 U.S. 863 (1980). When an indictment is replaced by an indictment containing fewer charges and lighter penalties, the vindictiveness doctrine does not apply. *United States v. Brooklier*, 685 F.2d 1208, 1215-1216 (9th Cir. 1982) (*citing United States v. Rosales-Lopez*, 617 F.2d 1349, 1357 (9th Cir. 1980) (no vindictiveness found when charges contained in the second indictment expose the defendant to no greater risk of punishment than did those contained in the first indictment)).

If there is a sufficient prima facie showing of vindictiveness, the burden shifts to the prosecution to show that any increase in the severity of the charges did not stem from a vindictive motive, or was justified by independent reasons or intervening circumstances that dispel the

appearance of vindictiveness. *Burt*, 619 F.2d at 836; *Griffin*, 617 F.2d at 1347. A presumption of vindictiveness raised by the prosecutor's decision to file new charges must be overcome by "objective evidence justifying the prosecutor's action." *Goodwin*, 457 U.S. at 376 n.8. The prosecution must show that the additional charges "did not stem from a vindictive motive, or [were] justified by independent reasons or intervening circumstances that dispel the appearance of vindictiveness." *Gallegos-Curiel*, 681 F.2d at 1168.

### 2. Direct Evidence of Vindictiveness

Toomer argues that the direct evidence of prosecutorial vindictiveness is that, before the court ruled on his motion to dismiss, the government announced that it would dismiss the indictment, and pursue the Nevada tax indictment, which was based upon the same factual allegations as the New Jersey indictment. Toomer argues that because the government had all the evidence needed to prosecute the tax case, the only reason the case was filed was because Toomer filed his motion to dismiss. The government responds that Toomer relies upon the timing of the indictment, but timing is not direct evidence of prosecutorial vindictiveness. The court agrees. The timing of re-indictment after a pretrial motion, without more, is not direct evidence of "expressed hostility or threat" to the defendant for having exercised a constitutional right. If it did, virtually all cases cited by both parties would be direct evidence cases. This is not a case in which the government threatened defendant if he exercised his right to file a motion. *See e.g., Hollywood Motor Car Co., Inc.*, 646 F.2d at 388. Nor does the possession of the underlying facts of the indictment support such a finding. Accordingly, the court finds no direct evidence of prosecutorial vindictiveness.

### 3. Appearance of Vindictiveness

Toomer also argues that the timing of the re-indictment when the government already had the evidence to support the new indictment creates the appearance of vindictiveness. The government disagrees, arguing that pretrial re-indictment on less serious charges does not raise the presumption of vindictive prosecution, and it had good reasons for bringing the tax charges when they did.

The government plausibly explained that prior to the *Gentile* decision, it believed it had a legitimate securities and investment advisor fraud case against Toomer. The government admits that it possessed evidence of tax offenses, but knew it could not realistically prosecute them because New Jersey was not a proper venue for those charges and it had no reason to allocate the resources necessary to pursue those charges in Nevada when it had an on-going case based upon the same facts in New Jersey. When Gentile was decided, however, the government realized that it would likely be unsuccessful in its efforts, and reconsidered its prosecutorial options, choosing to pursue the tax charges which were still within the limitations period. It explained its decision on the record when it moved to dismiss the New Jersey charges. Under these changed circumstances, the court finds that the government's motive for bringing the Nevada indictment was not due to "hostility or a punitive animus towards the defendant." Rather, there was good reason to pursue another indictment rather than to take no further prosecutorial action when it had undertaken a complex investigation involving voluminous discovery. The decision to bring the subsequent indictment was made during pretrial proceedings as the result of changed circumstances, and alleged less serious charges and potential consequences. The court concludes that a presumption of vindictiveness is not warranted in this case, and the government was justified by independent reasons or intervening circumstances that dispel the appearance of vindictiveness.

**B. Motion for Evidentiary Hearing and Request for Rule 17(c) Subpoenas**

Toomer alleges that the government has lost or destroyed his voicemail recording left on a cooperator's telephones during the time of cooperation. He argues that a recording exists because during a later recorded call between the two on December 8, 2014, the cooperator says, "Sorry, I know you called." Toomer provides no suggestion as to what information he left on the voicemail, or even whether he actually left a voicemail. Toomer had previously requested these materials, and the government requested and received some voicemails, but not the one Toomer argues is missing. Because discovery of the circumstances surrounding destruction or loss of the

material may mandate dismissal of the indictment,[2] Toomer moves for an evidentiary hearing. The government responds that it is not in possession of a "missing" voicemail message, does not believe that there is sufficient evidence that the "missing" voicemail actually exists, and does not believe a hearing is appropriate.

Upon a defendant's request, the government must disclose to the defendant any relevant written or recorded statement by the defendant if: the statement is within the government's possession, custody, or control; and the attorney for the government knows—or through due diligence could know—that the statement exists. Fed. R. Cr. P. 16(a)(1)(B).

Here, the government indicates that it is not in possession of the "missing" voicemail, and has made diligent efforts to locate it. The only evidence that the voicemail exists is Toomer's argument that the cooperator's statement, "Sorry, I know you called" means that a voicemail was left. But the cooperator's statement is ambiguous. It could also mean that he knew Toomer had called because, for example, his telephone had caller recognition capability. The cooperator's statement itself is insufficient to find that the "missing" voicemail ever existed. More importantly, an evidentiary hearing is not required because Toomer has provided absolutely no information for the court to determine whether the missing voicemail might be remotely relevant to the defense. The "mere possibility" that the lost or destroyed evidence is exculpatory does not meet the materiality standard. *United States v. Agurs*, 427 U.S. 97, 110-111 (1976). The fact that Toomer communicated with the cooperator is not an issue in dispute. The court cannot speculate as to whether material facts are at issue such that a hearing might be productive. Accordingly, an evidentiary hearing is not justified.

Toomer alternatively requests that he be allowed to subpoena the cooperator's and Toomer's former employer's telephone records during the time January 2014 to December 2015.

---

[2] Due process requires that criminal prosecutions "comport with prevailing notions of fundamental fairness." *California v. Trombetta*, 467 U.S. 479, 485 (1984). The government must afford criminal defendants "a meaningful opportunity to present a complete defense," *id.*, which in turn requires that it must provide an accused with exculpatory evidence. Unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law. *Arizona v. Youngblood*, 488 U.S. 51 (1988).

The government indicates that it has already produced call records for the cooperator's cellular phone for the time period of his communications with Toomer in 2014, but does not oppose Toomer's subpoena request.

Federal Rule of Criminal Procedure 17 governs the issuance of subpoenas in criminal cases. Specifically, Rule 17(c)(1) governs the production of documents:

> A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

The moving party bears the burden of showing good cause for the requested pretrial production, which requires a showing that: (1) the documents are evidentiary and relevant; (2) the documents are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) the defendant cannot properly prepare for trial without production in advance of trial and that failure to obtain the documents may unreasonably delay the trial; and (4) the application is made in good faith and not intended as a fishing expedition. *United States v. Nixon*, 418 U.S. 683, 699-700 (1974) (*citing United States v. Iozia*, 13 F.R.D. 335, 338 (S.D.N.Y. 1952)).

In *Nixon*, Supreme Court identified "three hurdles" that a moving party must clear in order to carry his burden: relevancy, admissibility, and specificity. *Id.* at 700. The moving party must "show the evidentiary nature of the requested materials . . . ." *United States v. Skeddle*, 178 F.R.D. 167, 168 (N.D. Ohio 1996). Conclusory allegations of relevance or admissibility are not sufficient. *United States v. Sellers*, 275 F.R.D. 620, 623-24. Documents requested in a Rule 17(c) subpoena must have more than some potential relevance or evidentiary use, instead, there must be a sufficient likelihood that the requested material is relevant to the offenses charged in the indictment. *Id.* at 624 (*citing Nixon*, 418 U.S. at 700). The specificity requirement "ensures that the subpoenas are used only to secure for trial certain documents or sharply defined groups of documents" and to discourage "fishing expedition[s]." *Id.* (quotations omitted).

Here, other than to facilitate an evidentiary hearing for the "missing" voicemail, which the court has already denied, Toomer has failed to indicate the relevance of the telephone records which he requests. Accordingly, the request to issue a subpoena for telephone records is denied

without prejudice. Toomer may reurge his motion if there are other reasons to obtain the telephone records.

**C. Motion for Bill of Particulars**

Toomer next moves for a bill of particulars, arguing that the indictment does not adequately inform him of the basic facts relating to the charges against him in sufficient detail to enable him to effectively prepare his defense and avoid surprise at trial. Specifically, he requests to know the amount of cash he allegedly received and failed to report, who gave it to him, the source of the cash, and when and where the cash was provided to him. The government opposes the request, indicating that it has provided substantial discovery which would allow Toomer to understand and defend against the charges.

Rule 7(f) of the Federal Rules of Criminal Procedure states:

> The court may direct the government to file a bill of particulars. The defendant may move for a bill of particulars before or within 14 days after arraignment or at a later time if the court permits. The government may amend a bill of particulars subject to such conditions as justice requires.

"The bill of particulars has three functions: '[1] to inform the defendant of the nature of the charge against him with sufficient precision to enable him to prepare for trial, [2] to avoid or minimize the danger of surprise at the time of trial, and [3] to enable him to plead his acquittal or conviction in bar of another prosecution for the same offense when the indictment is itself too vague, and indefinite for such purposes.'" *United States v. Giese*, 597 F.2d 1170, 1180 (9th Cir. 1980) cert. denied 444 U.S. 979 (1979) (quotation omitted); *see also United States v. Ayers*, 924 F.2d 1468, 1483 (9th Cir. 1991) (identifying the threefold purpose of a bill of particulars). "A defendant seeking particularization 'has the burden of showing by brief, affidavit, or otherwise that nondisclosure would lead to prejudicial surprise or the obviation of opportunities for meaningful defense preparation." *United States v. Jones*, 2:12-cr-00400-APG-GWF, 2013 WL 5954489, at *4 (D. Nev. Nov. 6, 2013) (*citing United States v. Perry*, 2013 WL 3158078 (D. Mass. June 19, 2013)).

Here, because the indictment charges Toomer with violations of 26 § U.S.C. 7206(1), making and subscribing a false return, the government is not required to prove the specific

amount of income that Toomer failed to report, only that the return that he signed or caused to be filed were false as to a material matter. *See United States v. Marashi*, 913 F.2d 724, 736 (9th Cir. 1990) ("Section 7206(1) is a perjury statute; it is irrelevant whether there was an actual tax deficiency.") The government indicates that it has provided discovery regarding the names of the stock promoters, securities, and investment advisory clients referenced in the indictment, and the 21-page indictment in the New Jersey case produced voluminous discovery and involved numerous discussions with Toomer's counsel, including pre-indictment meetings in which the government discussed the evidence in detail with Toomer's counsel. It indicates that it has produced law enforcement reports which reveal the specific individuals who paid Toomer the cash kickbacks, the general circumstances of those payments, and the approximate amounts. The discovery includes Toomer's own statements demonstrating that he was paid a percentage of his clients' total investments in the target stocks. The government has produced Toomer's clients' brokerage statements that reflect all of the investments in the target stocks, the amounts invested, that they demonstrate that Toomer received approximately $225,000 in cash during the time period of the scheme, and that he did not report any of that money on his tax returns. Finally, in response to Toomer's request to know the government's "method of calculation," the government responds that it will use the "specific items method," and will show that Toomer received reportable income which appears nowhere on his return.

The indictment, along with the information and explanation provided by the government, sufficiently describes Toomer's conduct such that he may understand the nature of the charges against him and is able to prepare for trial and avoid or minimize the danger of surprise. The law is clear that a bill of particulars is not a discovery device. As stated in *Giese*, "[a] defendant is not entitled to know all the [e]vidence the government intends to produce, but only the [t]heory of the government's case." 597 F.2d at 1181 (quotation omitted). There is no dispute that the government has made a significant disclosure of information regarding the charges. It appears to the undersigned that the government, combining sufficient details within the indictment with the discovery disclosures, has provided adequate information for defendant to defend against the

charges. Based on the record, the undersigned concludes that a bill of particulars is not necessary at this point to allow the defense to adequately prepare its case or to avoid prejudicial surprise.

### D. Motion for Grand Jury Materials

Toomer requests all grand jury materials of all government witnesses to test the credibility of the government's entire case. Toomer argues that the government does not have a consistent position as to the amount of cash Toomer allegedly received from the kickbacks. The New Jersey indictment alleges that he received in excess of "hundreds of thousands" of dollars in kickbacks, while the Nevada indictment alleges he received "tens of thousands" of dollars in cash kickbacks. The government responds that Toomer received the majority of the illicit kickback money in 2009, making his unreported income for that year substantially higher than for 2010. For that reason, the government did not allege "hundreds of thousands" of dollars for each count of the Nevada indictment as that allegation would have only been accurate for the count relating to 2009. The New Jersey indictment referenced hundreds of thousands in an introductory section laying out the entire scheme in broad terms, and that allegation was not limited to a particular year or time within the conspiracy period. The government therefore argues that the indictments are not inconsistent.

Rule 6(e) of the Federal Rules of Criminal Procedure codifies the traditional rule of grand jury secrecy. With specified exceptions, it prohibits disclosure of "matters occurring before the grand jury." Fed. R. Crim. P. 6(e)(2). "A party seeking disclosure of the grand jury transcripts must demonstrate a 'particularized need' for the disclosure." *United States v. Perez*, 67 F.3d 1371, 1381 (9th Cir. 1995), *opinion withdrawn in part on reh'g*, 116 F.3d 840 (9th Cir. 1997) (citations omitted). The standards the trial court should apply in granting disclosure of the grand jury transcripts are "(1) that the desired material will avoid a possible injustice, (2) that the need for disclosure is greater than the need for continued secrecy, and (3) that only the relevant parts of the transcripts should be disclosed." *Id.*

The premise of Toomer's argument is that the avoidance of injustice is served by understanding why the two indictments allege different amounts of kickbacks. The government has provided a reasonable explanation of the discrepancy as to the amounts alleged, and

persuasively argues that its burden under the Nevada indictment does not require proof of a tax deficiency. Balancing the interest of maintaining the secrecy of grand jury proceedings with the need for the disclosure of the testimony, the court finds that Toomer has not provided a sufficient need. Moreover, to provide for full and fair cross-examinations, the Jencks Act requires the United States to provide the defense with any statements made by a witness relating to his or her testimony after that witness has testified on direct examination. 18 U.S.C. § 3500. This will allow Toomer to fully examine the government witnesses on this issue. Accordingly, the request for all grand jury transcripts of all government witnesses is denied.

### E. Motion to Compel Discovery

Toomer moves for an order for the government to identify *Brady* and *Giglio* material in the discovery it has provided, arguing that the discovery is so extensive that he is unable to identify such material. Additionally, Toomer moves for the production of all remaining Rule 16 discovery, as well as *Brady*, *Giglio*, and Jencks materials, and all search warrants and supporting affidavits. The government responds that it has no obligation to identify *Brady* material, it has completed Rule 16 discovery, and it is aware of and will comply with its *Brady*, *Giglio*, and Jencks Act obligations.

Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure entitles a defendant to inspect and copy tangible things in the government's possession, custody, or control, such as books, papers, documents, etc., provided: (1) the item is material to preparing the defense; (2) the government intends to use the item in its case-in-chief at trial; or (3) the item was obtained from or belongs to the defendant. "'[T]o obtain discovery under Rule 16, a defendant must make a prima facie showing of materiality.'" *United States v. Lucas*, 841 F.3d 796, 804 (9th Cir. 2016) (citations omitted). This "threshold showing of materiality… requires a presentation of 'facts which would tend to show that the Government is in possession of information helpful to the defense.'" *United States v. Santiago*, 46 F.3d 885, 894 (9th Cir. 1995) (*quoting United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir.1990)). Although the materiality threshold is "low," "[n]either a general description of the information sought nor conclusory allegations of materiality suffice[.]" *Id.* at 804 (*quoting Mandel*, 914 F.2d at 1219); *see also id.* at 894-95.

As a general proposition, there is no constitutional right to discovery in a criminal case. *Weatherford v. Bursey*, 429 U.S. 545, 559 (1997). However, the government has a constitutional duty to disclose exculpatory material pursuant to *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The Supreme Court has also held that the government must disclose impeachment evidence, including all promises, inducements, or threats made to a witness in order to gain the cooperation of that witness in the investigation or prosecution of the defendant. *Giglio v. United States*, 405 U.S. 150, 154 (1972). The *Brady/Giglio* doctrine does not require the government to disclose neutral, irrelevant, speculative or inculpatory evidence. *See, e.g., U.S. v. Stinson*, 647 F.3d. 1196, 1208 (9th Cir. 2011). Evidence is material under *Brady* if there is a reasonable probability that, if the government had disclosed the evidence to the defendant, the result of the proceeding would have been different. *See United States v. Bagley*, 473 U.S. 667, 681 (1985); *see also United States v. Acosta*, 357 F.Supp.2d 1228, 1243 (D. Nev. 2005) (materiality standard governs pretrial requests for *Brady* disclosure). Although *Brady* should be interpreted broadly to encourage prosecutors to carry out their duty, it does not require the government to disclose every scrap of evidence that could conceivably benefit a defendant. *See, e.g. Moore v. Illinois*, 408 U.S. 786, 795 (1972) ("We know of no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work").

A defendant's allegation that the requested information might be material does not entitle him or her to an unlimited or unsupervised search of the government's files. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987). The government alone determines which information must be disclosed pursuant to *Brady*, and this decision is final. *Id.* The Supreme Court has cautioned the government not to "tack[] too close to the wind" in determining whether material is exculpatory, and therefore should be produced. *Kyles v. Whitley*, 514 U.S. 419, 439 (1995). However, the government has the responsibility to make judgment calls about what qualifies as "favorable evidence" and whether certain evidence is "favorable" depends on the context of the existing or potential evidentiary record. *Id.* The prosecutor is a representative of the government whose interests in criminal prosecution is not "that it shall win a case, but that justice shall be done." *Id.*

(Internal quotations and citations omitted). Therefore, "the prudent prosecutor will resolve doubtful questions in favor of disclosure." *Id.*

The Jencks Act, in order to provide for full and fair cross-examinations, requires the United States to provide the defense with any statements made by a witness relating to his or her testimony after that witness has testified on direct examination. 18 U.S.C. § 3500. A statement for the purposes of the Jencks Act is:

> (1) a written statement made by said witness and signed or otherwise adopted or approved by him; (2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or (3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.

18 U.S.C. § 3500(e). Both the Jencks Act and Rule 26.2 of the Federal Rules of Criminal Procedure, which incorporates the Jencks Act, provide that after a witness called by the government has testified, a criminal defendant, upon motion, is entitled to any prior statements made by the witness that relate to the subject matter of the witness's testimony. 18 U.S.C. § 3500 (emphasis added). Finally, when the defense seeks material that qualifies as both Jencks Act and *Brady* material, the Jencks Act controls with respect to the timing of disclosure. *United States v. Alvarez*, 358 F3d 1194, 1211 (9th Cir. 2004). The court does not have the authority to compel the government to produce Jencks Act statements before a witness testifies. *See United States v. Mills*, 641 F.2d 785, 789-90 (9th Cir. 1981), cert. denied, 454 U.S. 902 (1981). An order requiring early disclosure is unenforceable. *United States v. Taylor*, 802 F.2d 1108, 1118 (9th Cir. 1986), cert. denied, 479 U.S. 1094 (1987).

*1. The government's obligation to identify Brady and Giglio material in discovery*

Toomer argues that because the amount of discovery is massive, the government must identify *Brady* and *Giglio* material. The government responds that it has satisfied its obligations under *Brady* and *Giglio*, and it has no additional duty to identify potentially defense-favorable information from the disclosed materials because Toomer's lawyers are best suited to determine the usefulness of the information. The court agrees—there is no authority for the proposition that the government's *Brady* obligations "require it to point the defense to specific documents within a

larger mass of material that it has already turned over." *Rhoades v. Henry*, 638 F.3d 1027, 1039 n.12 (9th Cir. 2011) (*quoting United States v. Mmahat*, 106 F.3d 89, 94 (5th Cir. 1997)). Creating such an obligation would require the government to prepare and ensure the completeness of the defense case. Additionally, as is made clear by Toomer's arguments, he is in the best position to know what sorts of evidence would be exculpatory. Accordingly, the court will not require the government to identify such materials within the discovery.

    *2. Requested order that the government immediately produce all remaining Rule 16 discovery, as well as Brady, Giglio, and Jencks Materials and all search warrants and supporting affidavits*

  Under LCR 16-1(c), a motion for discovery must contain a statement certifying that, after personal consultation, the movant has been unable to resolve the dispute without court action. The purpose of the rule is to allow the court to understand precisely the issue to be resolved, and where the disagreements lie. *See* LR IA 1-3(f) (defining meet and confer). Toomer's counsel provides an affidavit which attaches more than twenty exhibits, many of which are letter exchanges with the prosecutor. The affidavit is not helpful because it does not explain the contours of the remaining discovery disputes. Here, the government indicates that it has completed its Rule 16 discovery obligations and understands its on-going discovery responsibilities. Toomer's reply addresses several issues, for example, the production of records that are held by the SEC, FBI, Bureau of Prisons, as well as an allegation that the government has engaged in bad faith regarding its Brady production. These issues were not raised in his original motion. The court will not consider a matter first raised in reply because the opposing side has not been able to respond to it. The court is therefore unable to determine whether there is a genuine dispute regarding any particular category of discovery, and declines to address it on the briefing before it.[3]

---

[3] The parties have stipulated to continue the trial date in this matter, in part because of the need to meet and confer regarding any discovery issues prior to filing any discovery-related motions. *See* Stipulation (ECF No. 57).

To the extent that Toomer broadly requests all affidavits and search warrants, the court accepts the government's representation that it did not seize any of Toomer's property using a search warrant, and none of the evidence anticipated to be used in this case was derived from search warrants. Toomer does not provide a sufficient justification for such discovery. As to the remainder of the requests, they are denied without prejudice.

**F. Motion to Strike Gratuitous Language**

Toomer moves to strike gratuitous language in the indictment, specifically, that he failed to report cash "kickback payments from stock promoters in exchange for recommending certain securities as investments to his investment advisory clients." He argues that the word "kickback" implies that any cash he allegedly received was improper, and even if that is true, it is irrelevant to the tax charges at issue and is unduly prejudicial. In other words, because the case is not about "kickbacks," but rather is about the tax treatment of income, the term is inflammatory and prejudicial. The government responds that the language provides context and clarity to the indictment.

Rule 7(d) of the Federal Rules of Criminal Procedure provides that "[u]pon the defendant's motion, the court may strike surplusage from the indictment or information." Fed. R. Crim. P. 7(d). "The purpose of a motion to strike under [Rule 7(d)] is to protect a defendant against prejudicial or inflammatory allegations that are neither relevant nor material to the charges." *United States v. Laurienti*, 611 F.3d 530, 547 (9th Cir. 2010). However, "a motion to strike surplusage from the indictment should be granted only if it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial." *United States v. Williams*, 445 F.3d 724, 733 (4th Cir. 2006).

Here, although the term carries negative connotations, "kickback" is relevant to the alleged tax evasion because it explains the source of the income that was allegedly not reported. Additionally, it provides context to the indictment because it lays out the factual basis for the government's case. Finally, there is little doubt that at trial, the income will be described as a "kickback," and so its inclusion in the indictment carries no particular significance. The court therefore finds that the allegation using the word "kickback" will not be stricken.

# III. CONCLUSIONS

**A.     RECOMMENDATION**

IT IS THEREFORE RECOMMENDED that defendant Toomer's motion to dismiss for prosecutorial vindictiveness (Section IIA) be DENIED.

## NOTICE

This report and recommendation is submitted to the United States district judge assigned to this case under 28 U.S.C. § 636(b)(1).  A party who objects to this report and recommendation may file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation.  Local Rule IB 3-2(a).  Failure to file a timely objection may waive the right to appeal the district court's order.  Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

**B.     ORDERS**

IT IS HEREBY ORDERED that Toomer's motion for evidentiary hearing and request for Rule 17(c) subpoenas (Section IIB), motion for bill of particulars (Section IIC), motion for grand jury materials (Section IID), motion to compel discovery (Section IIE), and motion to strike gratuitous language (Section IIF) are DENIED.

DATED: August 6, 2018

C.W. HOFFMAN, JR.
UNITED STATES MAGISTRATE JUDGE